IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | 8:06CR244 |
| vs. | |
| ARDELLE EDWARD DUNLAP JR., | SENTENCING MEMORANDUM |
| Defendant. | |

This matter is before the court after a hearing on a Petition for Warrant or Summons for Offender under Supervision, Filing No. 67.

## FACTS

Dunlap was charged with violating the mandatory condition that "[t]he defendant shall not commit another federal, state, or local crime." *Id.* The petition alleged that on May 9, 2012, United States Probation Officers Todd Enger and Doug Steensma went to Dunlap's residence and his girlfriend, Camille Easter, answered the door and stated that Mr. Dunlap was not present. *Id.* The probation officers alleged:

> Ms. Easter had a visible black-eye on the left side of her face and broken blood vessels inside her left eye. I asked Ms. Easter if Mr. Dunlap had hit her and she confirmed that Mr. Dunlap punched her due to argument related to Facebook. She stated that he later apologized and admitted that he needs to get help to address his anger issues.
>
> Additionally, Ms. Easter's mother, Lisa Easter, contacted our office on May 4, 2012, and informed our office that her daughter was assaulted by Mr. Dunlap on May 2, 2012, and had to have eleven stitches in her eye. An incident report with Omaha (NE) Police was filed by Lisa Easter. . . .

*Id.,* Petition at 1. Dunlap denied the allegations. Filing No. 87, Text Minute entry.

The court held an evidentiary hearing on the petition on August 13, 2012. *Id.* At the hearing, the government adduced evidence, through the testimony of the two probation officers, that the victim had told them that Dunlap assaulted her. Defendant

objected to the testimony as hearsay and as a violation of his rights under the Sixth Amendment. The victim also testified at the hearing. She testified that the defendant had not assaulted her, but that she had been assaulted by the boyfriend of her friend. She did not know the name of her purported assailant, nor did she describe him. Further, she could not remember her friend's last name. Photographs of the victim as she appeared at the emergency room were also admitted at the hearing.

After the hearing, the court found the defendant had violated his supervised release as alleged. Filing No. 90. A final dispositional hearing was conducted on August 22, 2012. The defendant was sentenced to one year and one day of incarceration.

## LAW

"Although [supervised release] violations often lead to reimprisonment, the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt." *Johnson v. United States*, 529 U.S. 694, 700 (2000). "'Also, in providing for the revocation of supervised release, 18 U.S.C. § 3583(e)(3) indicates that a court should follow the applicable Federal Rules of Criminal Procedure,' which 'emphasize that a proceeding to revoke supervised release is not a trial' but a hearing." *United States v. v. Woodard*, 675 F.3d 1147, 1152 (8th Cir. 2012) (quoting *United States v. Smith*, 500 F.3d 27, 31 (1st Cir. 2007)).

"The standard for admitting hearsay in a revocation hearing is different than at trial on the merits." *United States v. Black Bear*, 542 F.3d 249, 255 (8th Cir. 2008). "'The Federal Rules of Evidence do not apply, but rules of criminal procedure afford a

2

defendant the opportunity to question adverse witnesses at the hearing.'" *Id.* (quoting *United States v. Reynolds*, 49 F.3d 423, 426 (8th Cir.1995)); *see also United States v. Redd*, 318 F.3d 778, 783 (8th Cir. 2003) ("The Federal Rules of Evidence do not apply in revocation hearings.") That is not to say, of course, that all hearsay is admissible. *Redd*, 318 F.3d at 783. Rather, probationers and parolees enjoy due process and statutory protections in the context of their revocation hearings. *See Morrissey v. Brewer*, 408 U.S. 471, 488-489 (1972) (stating that a parolee is entitled to confront adverse witnesses in a revocation hearing unless the hearing officer specifically finds good cause for not allowing such confrontation); Fed. R. Crim. Pro. 32.1(b)(2)(C) (providing that a person accused of violating a condition of supervised release is entitled to a revocation hearing and an opportunity to "question any adverse witness unless the court determines that the interest of justice does not require the witness to appear").

The Sixth Amendment only applies to "criminal prosecutions," and a revocation of supervised release is not part of a criminal prosecution. *Martin*, 382 F.3d at 844. "'Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions,'" thus, the full protection provided to criminal defendants under the Sixth Amendment right to confrontation does not apply to revocation cases. *United States v. Ray*, 530 F.3d 666, 668 (8th Cir. 2008) (quoting *Morrissey*, 408 U.S. at 480); *see also Martin*, 382 F.3d at 844 n. 4 (holding that *Crawford v. Washington*, 541 U.S. 36 (2004), which involves the contours of the confrontation right in criminal prosecutions, does not apply to a revocation hearing).

Although a defendant does not have a Sixth Amendment right to examine adverse witnesses, he has a limited due process right to "question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C); *see also* Morrissey, 408 U.S. at 489 (outlining minimum requirements of due process). "The application of this 'narrow' due process protection, however, 'should be flexible enough to consider evidence . . . that would not be admissible in an adversary criminal trial.'" Ray, 530 F.3d at 668 (quoting Morrissey, 408 U.S. at 489); *see also* United States v. Farmer, 567 F.3d 343, 348 (8th Cir. 2009) (holding the admission of hearsay contents of domestic abuse victim's police report did not violate due process and confrontation rights).

Hearsay evidence offered by the government may be admitted at a supervised release revocation hearing if the evidence is sufficiently reliable and the government has a "reasonably satisfactory explanation" for not producing the witness. United States v. Martin, 371 F.3d 446, 448 (8th Cir. 2004). The district court must engage in a balancing test and weigh the defendant's right to confront adverse witnesses against the grounds asserted by the government for not producing the witness. United States v. Ahlemeier, 391 F.3d 915, 922 (8th Cir. 2004). "'The [g]overnment may show good cause by demonstrating the hearsay evidence is reliable and by offering a reasonably satisfactory explanation why live testimony is undesirable or impracticable.'" *Id.* (quoting United States v. O'Meara, 33 F.3d 20, 21 (8th Cir. 1994).

## DISCUSSION

The court finds by a preponderance of the evidence that the defendant violated his supervised release in assaulting Ms. Easter. The court finds Ms. Easter's testimony

4

that Dunlap was not her assailant to be totally lacking in credibility. The court finds her earlier out-of-court statement to the officers bears some indicia of reliability, despite the fact that she later withdrew it under oath. Her earlier statement to the officers was made closer to the time of the incident in question and before she "had the opportunity to recant as not infrequently done by victims of domestic abuse." See *United States v. Farmer*, 567 F.3d at 347.

The court finds Probation Officers Enger and Steensma were credible. They had no incentive to lie. Their testimony was corroborated by the photographic evidence of the victim's injuries and by a purported similar report by the victim's mother. The court finds the victim's memory of what occurred was more accurate when she made the statements to the probation officers. Further, when she testified during the hearing, she appeared to be attentively watching for approval from the defendant. The court finds that her credibility is suspect due to real or perceived pressure from the defendant to testify in his favor. Notably, it is "not uncommon for women to recant accusations of assault after the emotion and passion of an assault is healed by the passage of time." *Id.* at 346. The photographs show injuries typical of being punched in the face and not likely to be caused by an accident. The victim was beaten to the point that required medical treatment and a preponderance of evidence supports the conclusion that the defendant did it.

The record shows that although the defendant was charged with assault in Douglas County District Court in connection with the incident, the charge was later dismissed on the motion of the Douglas County Attorney. Filing No. 82, Motion to Review Detention at 1. The fact that law enforcement and the Douglas County Attorney

5

believed they had sufficient probable cause to arrest and charge the defendant further corroborates the officers' testimony. The dismissal of the state charge is of no consequence to the court's determination. The court is sadly familiar with the difficulty of obtaining domestic abuse convictions in the absence of victim testimony. Although a victim's failure to cooperate may derail a criminal prosecution, such is not the case when guilt can be established by a preponderance of evidence in the context of a violation of supervised release allegation. Under the circumstances, the court finds the probation officers' testimony with respect to the victim's statements is more reliable than the victim's recantation. A domestic violence victim is particularly vulnerable to pressure to recant accusatory testimony and an offender should not be able to reap the benefit of that vulnerability when other reliable evidence points to guilt. The officers' testimony is consistent with the victim's injuries and corroborated by evidence in the record.

In balancing the defendant's right to confront adverse witnesses against the government's explanation for not producing live testimony, the court notes that the victim did testify and the defendant had the opportunity to cross-examine her, as well as the officers. Although the government was able to meet its low threshold of proof in this matter, the court notes the quality of its presentation was substandard at best. The government did not offer the police report, nor present any police officer testimony, state court records, medical records, jail recordings or other documentary evidence that was easily obtainable and would have further corroborated the probation officer's testimony.

The court is all too familiar with the understanding between the government and the defense bar concerning domestic abuse cases. Offenders arrested and charged in

State court whose cases are later dismissed are not tried for supervised release violations. The rationale for the practice is understandable. In most instances the government is unable to prevail if the victim does not cooperate. It can usually prove the injury but not who caused the injury. It is neither clear nor relevant to the court why the AUSA decided to proceed in this case. However, in this instance, the evidence is persuasive that there was an injury and that the defendant caused it.

In sentencing this defendant, the court has considered the nature and circumstances of the defendant's offense and his history and characteristics and finds that the sentence imposed reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the supervised release violation. The record shows that with this violation the defendant had four violation petitions since he was first placed on supervised release in March of 2010. *See* Filing Nos. 41, 51, 54 and 67.

He admitted to a violation in connection with a state court charge for damage to property in an incident involving breaking windows at an ex-girlfriend's house. *See* Filing No. 53, Judgment for Revocation of Supervised Release. He was also alleged to have violated supervised release by being charged in state court with giving false information. Filing No. 51. He admitted to a violation for testing positive for marijuana on several occasions. See Filing No. 65, text minute entry; Filing No. 54, Petition for a Warrant or Summons for Offender Under Supervision. The record shows allegations of numerous other supervised release violations including failing to file reports, failing to contact probation officers and failing to undergo drug testing. See Filing Nos. 41, 51, and 54. He was sentenced to six months' incarceration for his first supervised release violation. Filing No. 53, Judgment. He has failed to satisfactorily complete several treatment

programs. Accordingly the court finds a sentence of one year and a day is sufficient but not longer than necessary to fulfill the goals of sentencing in this case. Because it does not appear that the defendant is a fit subject for supervision, no term of additional supervised release will follow.

Judgment has been entered in accordance with this Sentencing Memorandum.

Dated this 24th day of August, 2012.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.